Cresko Zoning Case.

468

Argued April 29, 1960.   Before JONES, C. J., BELL, JONES, COHEN, BOK and EAGEN, JJ.

reargument refused July 15, 1960.

*Solomon Lubin,* for appellants.

*John H. Hibbard,* for appellees.

OPINION BY MR. JUSTICE BOK, June 29, 1960:

This is a zoning case concerning property in Kingston Borough, Luzerne County.   Mr. and Mrs. Cresko, as owner-applicants, asked for a variance in order to use their land as a parking lot.   After taking testimony at three hearings the Board of Adjustment denied the application and the Creskos appealed to the Court of Common Pleas, which received further evidence by stipulation, reversed the Board, and ordered the variance.   Fifteen protesting neighbors have appealed.

The property, which contains about two acres, is bounded on the south by Crane Street, on the north by Davis Street, on the west by the rear line of a string

of residences whose fronts face South Dawes Avenue, and on the east by a dike owned by the Commonwealth and designed to keep out the Susquehanna River. East of the dike, work is being done on a proposed parkway; east of that is an apron of land marked Nesbitt Park on the plans; and east of this park is the river.

The Creskos became the equitable owners of the property in 1953, and at that time it was zoned "General Residence", although it had been zoned "Light Industry" for two years between 1947 and 1949. Cresko knew this when he bought it and has tried unsuccessfully to have it changed again to industrial. He owns other property south of Crane Street which is zoned "Light Industry", and still other property north of Davis Street, which is zoned partly residential and partly commercial. Apparently feeling sure of his position and before the court below granted the variance, he erected a discount house on his land south of Crane Street and leveled and graded the instant property for use as a parking lot by the clients of the discount house. During the course of his testimony he said that since the land had once been zoned commercial he had been "almost positive" that it could be again: he admitted having taken a chance on it. The following question and answer also appear, revealingly, in the record: "By Mr. Lubin. Now you want this Board to help you recoup your losses, is that right? By Mr. Cresko. I guess."

The Board found that the property can be used to build homes on. The court below made no finding beyond saying that to do so "would result in economic loss to the appellants" and listing the factors that made it think so. Cresko admitted that it could be used for "very, very inexpensive" low-grade housing.

We agree with the court below that it should, as it did, consider the case on the merits and not on the is-

sue of whether the Board committed a manifest abuse of discretion. The court took evidence, in the form of thirteen exhibits for the protestants and sixteen for the petitioners. These consist of photographs, plans, and letters. That this material entered the record by stipulation rather than over objection obviously does not alter its character as evidence, since the shape of the case with the new exhibits is not the same as without it. See *Richman v. Zoning Board of Adjustment,* 391 Pa. 254 (1958), 137 A. 2d 280. Hence we will see whether the court, rather than the Board, abused its discretion.

The familiar requirements for a variance are set forth thus in the *Richman* case by Mr. Justice BENJAMIN R. JONES: "The sole justification for the grant of a variance is that a strict application of the terms of the zoning statute will result in an 'unnecessary hardship', and, even then, the variance can be granted only if 'the spirit of the ordinance shall be observed; the public health; the public safety; and the general welfare secured; and substantial justice done.' He who seeks a variance has the burden of proving justification for its grant. The 'hardship' which must be proven must be an 'unnecessary', not a 'mere' hardship, as well as 'unique or peculiar to [the property involved] as distinguished from the impact of the zoning regulations on the entire district'. The fact that an increase or decrease in value will result from the grant or refusal of a variance will not, standing alone, constitute a sufficient hardship."

We consider it clear error to permit this variance.

Appellees offered a zoning map of Kingston Borough which shows that to vary the zoning pattern in the area would be an obvious invasion. The map reveals that for at least sixteen blocks to the westward the area is zoned solidly "General Residential", with

a fringe of "Light Commercial" along its southern edge on Market Street, which lies a long block south of Crane Street. Across Market Street is Kirby Park. Five hundred feet north of Davis Street there begins a strip zoned "Commercial", extending due west. Cresko's land between Crane and Market Streets is the greatest invasion of "Light Commercial" into "General Residential" for the entire sixteen blocks to the west of it.

Business operators persist in believing that a variance can be justified by an opportunity to make money, or, conversely, that it is an abuse of discretion to deny them the opportunity. Such pre-occupation with commerce is not at all what we mean by a variance or by the kind of hardship that justifies one. Our policy runs like Ariadne's thread through the cases, that we will support the judgment of zoning boards in controlling the domain entrusted to them, save for clear departures from law or discretion. A deviation from the letter of a zoning ordinance, to escape the stricture of being actual re-zoning under guise of a variance, can be allowed only when the difficulties and hardships are substantial and of compelling force: *Devereux Foundation Zoning Case,* 351 Pa. 478 (1945), 41 A. 2d 744; *Catholic Cemeteries Association Zoning Case,* 379 Pa. 516 (1954), 104 A. 2d 537. In *Riccardi v. Plymouth Township Board of Adjustment,* 393 Pa. 337 (1958), 142 A. 2d 289, we said: "The difficulties and hardships, which move the board of adjustment to depart from the strict letter of the ordinance, should be substantial and of compelling force . . . The power to grant a variance 'is to be "Sparingly exercised and only under peculiar and exceptional circumstances, for otherwise there would be little left of the Zoning Law to protect public rights." ' "

The applicants before us knew the situation when they bought it and deliberately took their chances. See *Upper St. Clair Township Grange Zoning Case,* 397 Pa. 67 (1959), 152 A. 2d 768. They seek to create unnecessary hardship out of the fact that their land is the only land shortened by the Commonwealth's condemnation for flood control (this occurred in 1938); that it faces the five-foot high dike; that it is the only land without a road in front of it and near which the side roads, Crane and Davis, are unpaved; and that the sewer line is so shallow that houses would have to pump their flux uphill. These things stared the applicants in the face at the time of acquisition, and instead of being unique are just as true of installing a parking lot as of building homes, excepting the sewer and the dike, and they could be met by fill. These are far from being unnecessary hardships such as were present in *Garbev Zoning Case,* 385 Pa. 328 (1956), 122 A. 2d 682.

It is to be noted, in considering the applicant's argument that the Government's taking line for its 1938 Flood Control project cut down the size of the lots into which the instant property was laid out, that after the dike was built the lots are still larger than those of appellants that face west on South Dawes Avenue. The problem of building homes on this land is one of position and arrangement, not of having to abandon it because of insuperable difficulties.

The order of the court below is reversed and the record is remanded with instructions to deny the variance. Costs to be paid by the appellees.